Hon. David Axelrod Commissioner New York State Department of Health
You ask whether under General Obligations Law, § 5-1601, which permits the creation of a durable power of attorney, a principal may designate another person to make health care treatment decisions in the event he or she becomes incompetent.
Section 5-1601 authorizes a principal to invest an attorney-in-fact with a power of attorney that will survive even if the principal should become incompetent or otherwise disabled. This is known as a "durable power of attorney". Actions taken by an attorney-in-fact in accordance with this durable power bind the principal as if he or she were competent. The attorney-in-fact must account to the principal's committee or conservator, should either be appointed, in which event the committee or conservator can revoke the attorney-in-fact's authority to act to bind the principal.
Neither the language nor the legislative history of section 5-1601 indicates an intent to authorize or preclude attorneys-in-fact from making health care treatment decisions on behalf of their principals. When section 5-1601 was enacted, apparently there was no judicial precedent for use of durable powers of attorney in a health care situation, and we have found no subsequent cases on this subject.
The possible use of durable powers for the novel purpose of designating an agent to make a principal's health care treatment decisions is likewise not alluded to in section 5-1601's legislative history. Powers of attorney have traditionally been used in financial or business contexts, a use implicitly recognized in section 5-1601's legislative history (L 1975, ch 195). There, the bill's sponsor, the Committee of Trusts, Estates and Surrogate's Courts of the Association of the Bar of the City of New York, indicated that a prime purpose of section 5-1601 would be to help New York residents avoid certain federal estate tax problems associated with so-called "flower bonds" (Sponsor's Memorandum in Support of the Bill, Bill Jacket, L 1975, ch 195). Another purpose of section 5-1601, which expressly permits a principal to authorize his attorney to continue acting for him following disability or incompetence, was to provide an inexpensive alternative to the use of a committee or conservator and to avoid the stigma sometimes associated with having one judically appointed (ibid.).
In sum, section 5-1601 and its history do not reflect a legislative intent either to grant or to deny an agent the power to make health care decisions for an incompetent principal.
A reading of the remaining sections of the statutory short form power of attorney, specifically sections 5-1501, 5-1502L and 5-1503, indicates that powers of attorney can include broad powers. These sections explicitly allow principals to modify or add to the powers already granted by the statutory short form. This is noted in section 5-1501, which provides that the short form "expressly permits the use of any other or different form of power of attorney desired by the parties concerned". Section 5-1502L permits a principal to authorize an agent to act on the principal's behalf with respect to any matters not already specified by the short form; section 5-1503 contains similar provisions.
Several factors should be considered in evaluating the short form's broad language. First, all of the other powers authorized by the short form, except for those found in section 5-1502I (powers regarding "personal relations and affairs"), relate to matters traditionally associated with powers of attorney: business, financial and estate transactions. The Legislature authorized the short form partly in response to difficulties experienced by absent service personnel during World War II (NY Legis Doc 1946, No. 65[L], p 37). Its flexibility was designed to enable servicemen and women, and others absent from their homes and businesses for extended periods, to leave behind an alter ego with comprehensive powers to manage their affairs during their absences (ibid.). Consequently, it is doubtful that the Legislature foresaw or intended that the short form be used for transactions very dissimilar from those traditionally dealt with by using powers of attorney.
Another factor to consider is that principals may delegate to agents only those matters as to which they are permitted by law to act through an agent (General Obligations Law, §§ 5-1501, 5-1502A[12], 5-1502B[10],5-1502C[13], 5-1502D[17], 5-1502E[10], 5-1502F[13], 5-1502G[10],5-1502H[10], 5-1502I[14], 5-1502J[7], 5-1502K[5], 5-1502L). Under agency law, decisions and acts which by their nature, or by public policy require personal performance may not be delegated to an agent (Camardellav Schwartz, 126 App. Div. 334, 337 [2d Dept, 1908]; Restatement, Agency 2d, § 17). A surviving spouse's right of election, the decision whether or not to bring a divorce action, and changing a life insurance beneficiary have all been held to be decisions that are too personal to be made by a third person on behalf of an incompetent (Camardella vSchwartz, supra; Mainzer v Avril, 108 Misc. 230, 232 [Sup Ct, Kings Co, 1919]; Matter of Wainman, 121 Misc. 318, 320 [Sup Ct, Oneida Co, 1923]). The question raised here is whether a health care decision would similarly fall into this category.
Thus, although the issue is not free from doubt, it appears that a durable power of attorney is an uncertain vehicle for a delegation of authority generally for an agent to make health care decisions on behalf of an incompetent person. However, this does not close the inquiry. Each person has a common law right to decline medical treatment (Matter ofStorar [the Eichner Case], 52 N.Y.2d 363 [1981]). The question remains whether a person may exercise this right through a specific delegation of authority in a durable power of attorney.
In Matter of Storar, the Court of Appeals honored a patient's desire, expressed prior to incompetence and established by clear and convincing evidence, that extraordinary medical care should not be used to maintain him in a vegetative state. Brother Fox had stated his desire in conversations with the staff of a Catholic school where he resided (id.,
at p 270). The decision was based on the common law right to decline medical treatment. It is conceivable that a durable power of attorney might be used as a vehicle to express a personal desire, as in Storar. In that situation, rather than forming the basis for a general delegation of authority to make a medical decision, the durable power of attorney would specifically delegate to an agent the responsibility to communicate the principal's decision to decline medical treatment under certain circumstances. Under Storar, the durable power of attorney along with any other needed evidence, must clearly and convincingly evidence the principal's desire.
In sum, we believe that a durable power of attorney cannot with prudence be used to delegate generally to an agent the authority to make health care decisions on behalf of an incompetent principal. Although there may be valid reasons for extending the authority, this is a decision to be made by the Legislature.* However, it is our opinion that a durable and properly limited power of attorney may be used to delegate specifically to an agent the responsibility to communicate the principal's decision to decline medical treatment under defined circumstances.
* Use of a durable power of attorney for making health care decisions on behalf of an incompetent principal has expressly been authorized by statute in Pennsylvania and California (Shearer GM, Levy RB Decision Making for Incompetent Patients by Designated Proxy, N. Engl J Med 1984; 310: 1598-1601 [citing 20 Pa Cons Stat, ¶¶ 5601-5606; Chapter 1204 of the 1983 California Statutes]).
A conservator or committee may be judically appointed to act as a patient's health care representative (Mental Hygiene Law, §§ 77.01, 78.01; Public Health Law, §2803-c [3][j]). A person, prior to becoming incompetent, may nominate whom he or she wishes to serve as committee and if the court finds that the nominee would serve the best interests and welfare of the incompetent, it is required to appoint that person as committee (Mental Hygiene Law, § 78.05). In the proceeding to appoint a conservator, the proposed conservatee may nominate a conservator who must be appointed by the court upon a finding that the appointment is in the best interests of the proposed conservatee (id., § 77.03[d]).